UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION


IN RE: INFANTS BORN OPIOID-DEPENDENT
PRODUCTS LIABILITY LITIGATION
LITIGATION                                                                                       MDL No. 2872


ORDER DENYING TRANSFER


**Before the Panel**:[*] Plaintiffs in seven actions move under 28 U.S.C. § 1407 to centralize this litigation in the Southern District of West Virginia or, alternatively, the Southern District of Illinois. The litigation consists of seven actions pending in two districts, as listed on Schedule A.[1] Plaintiffs in potential tag-along actions in the Eastern District of Pennsylvania (*Doe*) and the Southern District of West Virginia (*Riling*) support the motion, as do non-governmental agency *amici*.[2] Manufacturer defendants[3] oppose the motion, as do distributor defendants.[4]

After considering the argument of counsel, we conclude that Section 1407 centralization of this litigation is not necessary. The actions now before us are all brought on behalf of opioid-addicted infants who have been diagnosed with neonatal abstinence syndrome (NAS). All cases share facts concerning the allegedly improper marketing and sale of prescription opiates, as well as

---

[*] Judges Ellen Segal Huvelle and Nathaniel M. Gorton did not participate in this decision.

[1] The parties have notified us of three potentially-related actions, two of which are pending in MDL No. 2804 – *In re: National Prescription Opiate Litigation*. Additionally, one of the actions on plaintiffs' motion, the Southern District of West Virginia *Moore* action (along with two other actions involving opioid-dependent infants, which were omitted from the current motion without explanation), is subject to a pending motion to vacate the conditional transfer order to MDL No. 2804. We are denying that motion in a separate order.

[2] March of Dimes, Inc., Child Welfare League of America, Facing Addiction with NCADD, Love on Wheels, West Virginia Citizen Action Group, Rise Up West Virginia, Catholic Committee of Appalachia, Appalachian Catholic Worker and NETWORK Lobby for Catholic Social Justice.

[3] Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Janssen Pharmaceutica Inc. n/k/a Janssen Pharmaceuticals, Inc; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Johnson & Johnson; Purdue Pharma Inc.; Purdue Pharma L.P.; The Purdue Frederick Company Inc.; Teva Pharmaceutical Industries Ltd.; Watson Laboratories, Inc.; Allergan plc f/k/a Actavis plc; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; and Cephalon, Inc.

[4] Amerisourcebergen Corp., Cardinal Health, Inc., and Mckesson Corp.

their allegedly improper diversion to illicit channels. There is substantial overlap between all of these cases and MDL No. 2804 – *In re: National Prescription Opiate Litigation*, which we centralized in December 2017. *In re: National Prescription Opiate Litig.,* 290 F. Supp.3d 1375 (J.P.M.L. 2017). This is unsurprising, since many of the cases on plaintiffs' motion already are pending in that MDL, transferred without objection from plaintiffs. Factual questions of the manufacturing and distributor defendants' knowledge of and conduct regarding the alleged diversion of prescription opiates, as well as the manufacturers' alleged improper marketing of such drugs, lie at the heart of each case now before us. The identity of plaintiffs and their unique damages – which plaintiffs and *amici* assert include the need for a medical monitoring trust that funds prolonged, multidisciplinary care – do indeed differentiate these cases from those brought by the cities, counties and states that comprise the bulk of MDL No. 2804. But these differences among claims and requested relief, in our opinion, do not justify the creation of a new MDL.[5]

Few efficiencies will be gained by creating a new MDL for NAS plaintiffs. Discovery regarding the marketing, manufacture, distribution and diversion of prescription opiates in plaintiffs' cases will substantially overlap with that being undertaken in MDL No. 2804. The transferee judge in a new MDL would need to coordinate on most matters pertaining to liability with the transferee court in MDL No. 2804. Significantly, the risk of inconsistent pretrial rulings would increase dramatically were we to create another MDL, as plaintiffs request, before a judge in a district outside the Northern District of Ohio (in fact, plaintiffs' requested transferee courts are both outside the Sixth Circuit). The progress of both MDLs likely would be hindered by the need for two judges to attend to overlapping discovery matters, rule on redundant motion practice and administer both MDLs separately.[6] New case management protocols and counsel leadership would have to be established in the NAS MDL. The substantial duplication of activity would be costly, and it likely would slow the pace of MDL No. 2804, in which discovery and bellwether motion practice is

---

[5] "Section 1407 does not require a complete identity or even majority of common factual and legal issues." *In re: Satyam Computer Servs., Ltd., Sec. Litig.*, 712 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010); *see also In re: ClassicStar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1346 (J.P.M.L. 2007) ("Regardless of any differences among the actions, all actions arise from the same factual milieu...").

[6] Aside from the substantive reasons why we are denying creation of a new MDL, the motion now before us also is procedurally problematic. Six actions on the motion were transferred to MDL No. 2804 without opposition. Those actions must first be remanded to their originating court, due to Section 1407(a)'s requirement that "[e]ach action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated[.]" 28 U.S.C. § 1407(a). No party has requested Section 1407 remand of those transferred actions. As we previously have noted, we accord great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate, given that he or she has supervised the day-to-day pretrial proceedings in the MDL. *See In re Columbia/HCA Healthcare Corp. Qui Tam Litig. (No. II)*, 560 F. Supp. 2d 1349, 1350 (J.P.M.L. 2008) (quoting *In re: Holiday Magic Sec. & Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977)).

underway.  Creating a new MDL simply is at odds with Section 1407's mandate that centralization "promote the just and efficient conduct of [the involved] actions." 28 U.S.C. § 1407(a).

Movants offer several critiques of MDL No. 2804 as a justification for a new MDL. Plaintiffs are dissatisfied that the transferee court denied their request for leave to seek to establish an NAS infant track in June 2018.  Their renewed motion, filed in late-August 2018, remains under submission.  In their briefs and at oral argument, the NAS plaintiffs expressed concern that the MDL No. 2804 Plaintiffs' Executive Committee[7] was not sufficiently addressing their needs in the litigation by, for instance, keeping counsel for the NAS plaintiffs sufficiently apprised of upcoming depositions.  NAS plaintiffs argue that these issues rise to the level of a deprivation of due process, citing the Supreme Court class settlement cases *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)).  *Amchem* and *Ortiz*, however, are readily distinguishable, inasmuch as they arose in starkly different procedural circumstances.  The NAS plaintiffs now before us are represented by their own counsel, and no other counsel is purporting to settle the NAS plaintiffs' interests on their behalf while also representing another class with conflicting interests.

Historically, we have declined to entangle ourselves in case management disputes such as this.[8]  Instead, we dedicate their resolution to the discretion of the transferee judge.  In 2013, for example, we were asked to carve out claims from the existing Deepwater Horizon MDL to create a new MDL.  We rejected that request:

> No doubt, this is an extremely large and highly complex MDL. However, in our considered opinion, creation of another Deepwater Horizon MDL is not a solution to whatever challenges the current litigation may present. The Panel does not aspire to the role of an appellate court for disaffected MDL litigants. We are neither authorized by statute nor inclined to act in such a role. Moreover, the difficult issues of managing this complex litigation are best determined after a full airing before the transferee judge.

*In re: Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010 (No. II)*, 961 F. Supp. 2d 1355, 1357 (J.P.M.L. 2013); *see also id.* at 1356 ("Given this extensive overlap, we find it quite impossible to see how a new Deepwater Horizon MDL would not result in duplicative discovery and pretrial motion practice, as well as other redundant pretrial proceedings.").  Denial of centralization is similarly warranted here.

---

[7] The MDL No. 2804 Plaintiffs' Executive Committee did not file a response to the current motion to centralize.

[8] *C.f. In re: Glenn W. Turner Enterp. Litig.*, 368 F. Supp. 805, 806 (J.P.M.L. 1973) (noting that "the Panel is not vested with authority to review decisions of district courts, whether they are transferor or transferee courts.") (citations omitted).

- 4 -

Although we are denying centralization, we appreciate plaintiffs' concerns that their counsel are not being informed about the conduct of this litigation. Still, we think plaintiffs' arguments for creating a new MDL boil down to case management issues that are most appropriately presented to, and resolved by, the transferee judge, who is in the best position to appreciate all of the nuances presented by this exceptionally complex litigation.  We are confident in his ability to ensure that non-leadership counsel and other litigants are treated appropriately in this litigation.[9]

IT IS THEREFORE ORDERED that the motion for Section 1407 centralization of the actions listed on Schedule A is denied.

PANEL ON MULTIDISTRICT LITIGATION

*Sarah Vance*
Sarah S. Vance
Chair

Lewis A. Kaplan                R. David Proctor
Catherine D. Perry          Karen K. Caldwell

---

[9] A frequent approach by transferee judges has been to create a process for the presentation of unique or dissenting viewpoints and issues in initial orders appointing counsel.  *See, e.g.*, MDL No. 2740 – *In re: Taxotere (Docetaxel) Prods. Liab. Litig.*, Case No. 2:16-md-2740, doc. 4 at ¶ 16(b)(*iii*) (duties of PSC include acting "as spokesperson for all plaintiffs at pretrial proceedings and in response to any inquiries by the Court, subject of course to the right of any plaintiff's counsel to present non-repetitive individual or different positions."); MDL No. 2329 – *In re: Wright Medical Technology, Inc., Conserve Hip Implant Products Liability Litigation*, N.D. Georgia, Case No. 12-md-2329, doc. 79 at ¶ 4(f) ("Counsel for any of the Plaintiffs who have individual issues or divergent positions from those of other Plaintiffs as presented by Co-Lead Counsel may submit to the Court separate arguments, written or oral, provided that such submissions do not duplicate those presented by Co-Lead Counsel."); MDL No. 1431 – *In re: Baycol Products Liability Litigation*, D. Minnesota, Case No. 0:01-md-1431, doc. 16 at 5. ("Counsel for plaintiffs who disagree with Co-Lead Counsel (or those acting on behalf of lead counsel) or who have individual or divergent positions may present written and oral arguments, conduct examinations of deponents, and otherwise act separately on behalf of their client(s) as appropriate, provided that in doing so they do not repeat arguments, questions, or actions of Co-Lead Counsel.").

**IN RE: INFANTS BORN OPIOID-DEPENDENT
PRODUCTS LIABILITY LITIGATION
LITIGATION** MDL No. 2872

## SCHEDULE A

<u>Northern District of Ohio</u>

REES, ET AL. v. MCKESSON CORPORATION, ET AL., C.A. No. 1:18-45252
WOOD v. PURDUE PHARMA L.P., ET AL., C.A. No. 1:18-45264
SALMONS, ET AL. v. PURDUE PHARMA L.P., ET AL., C.A. No. 1:18-45268
AMBROSIO, ET AL. v. PURDUE PHARMA L.P., ET AL., C.A. No. 1:18-45375
FLANAGAN, ET AL. v. PURDUE PHARMA L.P., ET AL., C.A. No. 1:18-45405
HUNT v. PURDUE PHARMA L.P., ET AL., C.A. No. 1:18-45681

<u>Southern District of West Virginia</u>

MOORE, ET AL. v. PURDUE PHARMA L.P., ET AL., C.A. No. 2:18-01231